McMICHAEL & WILDMAN MFG. CO. v. RUTH et al.

(Circuit Court, E. D. Pennsylvania. July 1, 1903.)

No. 48.

1. PATENTS—INFRINGEMENT—KNITTING MACHINE.

The McMichael & Wildman patent, No. 500,151, for an automatic rib-knitting machine, is entitled only to a narrow construction in view of the state of the prior art, and a narrow range of equivalents. As so construed, claims 1 and 2 *held* not infringed.

In Equity. Suit for infringement of letters patent No. 500,151, for a rib-knitting machine, granted June 27, 1893, to Abner McMichael and Frank B. Wildman. On final hearing.

Ernest Howard Hunter, for complainant.
Joseph C. Fraley, for respondents.

J. B. McPHERSON, District Judge. The patent in controversy is No. 500,151, granted June 27, 1893, for improvements in automatic rib-knitting machines. At that time the art to which the invention belongs had come to be highly developed, and it is not contended that the novelty of the patent extends beyond certain details in a particular part of the mechanism. The following quotation from the brief of defendants' counsel describes the general type of machine with which the present suit is concerned:

"Automatic rib-knitting machines of precisely the same general character and construction are admittedly old and well known.

"These old machines employ two sets of knitting needles; one set being mounted in a vertical cylinder, so as to knit an ordinary tubular web, whilst the other set of needles is radially mounted in a flat disc, arranged horizontally at the upper ends of the cylinder needles. The vertical needles move up and down, and the horizontal needles move radially in and out towards the vertical needles, so that both sets of needles form loops in the same fabric.

"The flat disc in which the horizontal needles are mounted is called the 'dial,' and these needles are referred to as 'dial needles.'

"In the type of machines now under consideration, both the needle cylinder and the dial are stationary, the needles in each case being actuated by rotating cams, properly mounted with relation to the cylinder and the dial respectively. At times it is desirable to change the length of throw of the dial needles in order to vary the length of the loops which they form, and at other times it is desirable to throw the dial needles out of action altogether. For this purpose, a portion of the 'dial cam,' or rotary cam, which operates the dial needles, has long been movable and pivoted, so that it can be turned outwards or inwards, to give a greater or less throw to the needles, or to pass them by without shifting them at all. This movement of the pivoted portion of the dial cam has been affected by various devices, and, in order that the machine shall be automatic, pattern mechanism has been provided to control the movement, actuating at predetermined intervals.

"Long prior to the date of the invention in controversy, machines constructed as just described were in extended and successful use, and patents had been granted for various kinds of mechanism to actuate the movable part of the dial cam inwards or outwards, and for various pattern mechanisms to control its movements."

The improvement involved in the present suit refers (in the words of counsel for complainant) to "the intermediate power-transmitting devices, by which the movements imparted by the pattern mechanism

are transmitted to the cams for controlling the horizontal or dial needles to produce, when desired, welts and loose courses." Welts and loose courses are thus described:

"When the needles are operated normally to take and shed a loop with each reciprocation a plain ribbed fabric is produced. If one set of needles, as the dial needles, are retracted—i. e., not projected far enough to shed the loops—while the other or vertical needles are operating normally, and this operation is continued for two or more courses before the normal operation of the radial needles is resumed, there will be formed a slight fold or protuberance on the face of the fabric, which is commonly called a 'welt.'

"So, if the needles of either set, after taking the loops, are retracted or drawn in to a greater extent than is required for ordinary knitting, they will form longer loops and produce a more loosely knitted fabric. A row of these long loops is known in the art as a 'loose course.'

"These variations in the extent of movement of the needles are produced by changing the positions of the needle-operating cams, and these changes in the positions of the cams are produced by pattern mechanism through suitable intermediate power-transmitting devices. As these changes take place automatically, under the control of the pattern mechanism, the machines are 'automatic,' so far as the variations in knitting are concerned."

The first two claims of the patent, which alone are involved, are as follows:

"(1) In a knitting machine, the combination of a stationary dial carrying the needles, a rotary cam for operating said needles and having one portion thereof movable for the purpose of varying the amount of reciprocation of the needles, a crank shaft rotating with said movable part of said cam, rotatable supports for the cam, and crank shaft connections between said cam and the crank of the crank shaft, whereby the latter moves the former, a second shaft geared to the first mentioned shaft and adapted to rotate simultaneously in an opposite direction, arms secured to the respective shafts at different elevations so that when one is thrown in the other is thrown out, pattern mechanism, and projecting parts moved by the pattern mechanism for bringing said parts into the path of either of the arms for operating said arms respectively at different times.

"(2) In a knitting machine, the combination of a stationary dial carrying the needles, a rotary cam plate having a cam for operating said needles of the dial and having one portion of the cam movable for the purpose of varying the amount of reciprocation of the needles, a crank shaft rotating with said movable part of said cam, a rotating support for the cam plate, a connection between said cam and crank of the crank shaft, whereby the latter moves the former; a second shaft mechanically connected to the first mentioned shaft and adapted to rotate simultaneously in an opposite direction, arms or projections secured to the respective shafts at different elevations, so that when one is thrown in the other is thrown out, pattern mechanism, and projecting parts moved by the pattern mechanism for bringing said parts into the path of either of the arms for operating said arms respectively at different times, and a removable ring piece adapted to rotate with the cam and carry the said shafts."

It is conceded that these claims are substantially identical. In claim I the shaft (J) is said to be "geared" to the shaft (H), while in claim 2 it is said to be "mechanically connected." In claim 2, the rotatable support for the crank shaft spoken of in claim I is referred to as the "removable ring piece," and the support for the cam is called "a rotary cam plate." The elements of the claims are thus enumerated by complainant's counsel, who refers also to the drawings accompanying the specification:

"(1) 'The stationary dial carrying the needles'—this is the horizontal needle dial, B; (2) the 'rotary cam for operating said needles and having one

portion thereof movable for the purpose of varying the amount of reciproca-
tion of the needles'—the cam XQ, of which the portion Q is movable for the
purpose described; (3) 'a crank shaft rotating with said movable part of said
cam'—the crank shaft H, which, being carried by the ring E, rotates with
the cam Q, which is carried by the cam plate, P, connected with the cam
ring F, through the uprights G, G; (4) 'rotatable supports for the cam and
crank shaft'—the cam plate, P, and ring casing, EE; (5) 'connections between
said cam and crank of the crank shaft, whereby the latter moves the former'
—the link, O, connecting the crank, h, of the crank shaft, H, with the cam
Q; (6) 'a second shaft geared to the first-mentioned shaft, and adapted to
rotate simultaneously in the opposite direction'—the shaft, J, geared or
'mechanically connected' with the crank shaft by the segmental gears, i, i;
(7) 'arms secured to the respective shafts at different elevations, so that·
when one is thrown in the other is thrown out'—the arms I, K; (8) 'pattern
mechanism'—the pattern wheel $S^6$, and the rock shaft $S^3$, and levers $S^5$, $S^4$;
(9) 'and projecting parts moved by the pattern mechanism for bringing
said parts into the path of either of the arms for operating said arms
respectively at different times'—the disc, S, on the shaft, s.

"In claim 2, element 4—'rotatable supports for the cam and crank shaft'—
is divided up into its two parts: 'the rotary cam plate having a cam for
operating the needles' (the plate P) 'and a removable ring piece adapted to
rotate with the cam, and carrying the shafts' (the removable ring casing E).

"While the first, second, fourth, eighth, and ninth elements are, of course,
necessary to make an operative knitting machine, they are simply usual
and necessary parts of a machine of this kind. It is, however, in the combi-
nation of the third, fifth, sixth, and seventh elements that the novelty and
merit of the invention reside. These elements—the crank shaft H, having
its crank, h, connected with the removable cam by the link O; the second
shaft, J, 'geared' or 'mechanically connected' with the crank shaft; and the
arms I, K, on the shafts H, J, respectively—constitute the power-transmit-
ting devices for transmitting motion from the pattern mechanism to the
cam to render the machine 'automatic.'"

The object of the invention, as set forth in the specification, is:

"To provide automatic mechanism to control the action of the machine
under the influence of a pattern-governing mechanism, to insure the proper
formation of loops in the fabric for making welts and loose courses."

Much testimony was taken upon two questions that I do not find it
necessary to decide, namely, whether, in view of the prior art, the com-
plainant's machine exhibits patentable novelty; and whether one
Lewis Jones, who is not joined as a party complainant, is the owner of
a one-third interest in the patent. It seems to me that the case must
be decided against the complainant on the question of infringement,
and therefore that no other question demands attention. Manifestly,
the patent is to be narrowly construed, and I think has little claim to
the benefit of the doctrine of equivalents. The precise point at issue
between the parties appears in the following question and answer from
the cross-examination of defendants' expert:

"114. If the court should be of opinion that the connection between the
rock shaft and the second shaft in defendant's machine is a geared connec-
tion, this particular combination of elements [i. e., the combination described
in complainant's patent] is found in defendant's machine?

"Ans. With the assumption made in the present question that the pin
and slot connection found in defendants' machine is identical with the geared
connection referred to in the patent in suit, the combination of elements
specified may be found in defendants' machine."

In view of this definite statement, a detailed description of the de-
fendants' machine is not necessary. It has a pin and slot connection be-

tween the shafts, instead of the connection described in the claims of the patent; and, considering the prior art, I am of opinion that the complainant cannot successfully assert that the device employed by the defendants infringes the patent in suit. It seems to me that the charge of infringement cannot be better answered than in the words of defendants' counsel:

"If it be open to the patentees to substitute for the actuating mechanism of the crank shaft a well-known device used for an analogous purpose, it is equally open to another manufacturer to employ another old device in this connection, without tribute to the patent.

"The characteristic of the complainant's machine is that it employs gears as the connection between the crank shaft and the second shaft, whilst the defendants do not employ gears. The patentees have taken from the old art the two projecting arms and gears of the Pepper patent, No. 263,720, and the defendants, with an equal right to draw upon the old art, have taken the pin and slot connection of the Heginbotham patent, No. 286,003.

"Viewed in one aspect, these devices may be considered as known mechanical substitutes for one another, but in this aspect the patent itself is void, because the geared arms, which it employs as the actuating mechanism of the crank shaft, were equivalents or known substitutes for the barrel and slot mechanism of the Stewart patent.

"Hence the complainant's case is not advanced by an attempt to treat the pin and slot connection as an equivalent of the gears.

"It is not a gear, and it differs from a gear in certain material features. In a gear there is necessarily a plurality of teeth which successively engage and disengage one another, producing what the claims of the patent term a 'simultaneous movement,' that is to say, the gears travel with the same peripheral speed. In the pin and slot connection, which characterizes defendant's device (and which, in itself, is an old mechanism in this particular class of machines), there are no teeth, the pin is never disengaged, and it essentially has an endwise movement in the slot, which causes one shaft to move at a different speed from the other, instead of simultaneously.

"Incidentally it may be stated that the dial cam of defendants' machine is wholly different from the dial cam in the patent, and neither can perform the other's work."

I think this argument is sound, and agree with the necessary conclusion therefrom that the bill must be dismissed, with costs.